a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| ALISBEY SANTILLON GATA #02399-506, Plaintiff | CIVIL DOCKET NO. 1:24-CV-0602 SEC P |
|---|---|
| VERSUS | JUDGE DRELL |
| BRIAN BAILEY, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Complaint (ECF No. 1) filed by pro se Plaintiff Alisbey Santillon Gata ("Gata") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Gata is incarcerated at the United States Penitentiary – Victorville in Adelanto, California. He alleges that he was subjected to excessive force by Defendant Brian Bailey and other officers at the United States Penitentiary in Pollock, Louisiana.

Because Gata fails to state a plausible claim, his Complaint (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

I. **Background**

Gata alleges that he decided to jog from the cafeteria to his unit because it was raining. When he ran past a checkpoint, multiple officers ordered him to stop running. ECF No. 1-2 at 6. Gata refused to stop running because he "felt disrespected." *Id.*

1

When Gata reached his unit, an officer instructed him to return to the checkpoint. *Id.* Gata advised the officer that he would not go back in the rain because he has asthma. He ignored the officer's instruction and proceeded up the stairs. *Id.* Gata's counselor then instructed him to return to the checkpoint. Gata initially refused because of his asthma. *Id.* However, he eventually proceeded down the stairs to return to the checkpoint. *Id.* at 7.

Halfway down the stairs, an officer called Gata "stupid" for not listening to commands. *Id.* Gata informed the officer that he "will not listen when someone disrespects [him]." *Id.* Gata continued down the stairs, where three other officers screamed at him for disobeying commands. *Id.*

Gata was instructed to sit on a bench in front of the lieutenant's office. Gata told the officer that he was going to run to the office because it was raining, and Gata could not be in the rain due to his asthma. *Id.* Gata proceeded to run and was chased by an officer yelling for him to stop. When Gata turned around, he was slammed onto the ground and allegedly struck "everywhere." *Id.* at 8.

Gata was subsequently charged and convicted of an unspecified disciplinary violation. *Id.*

## II.   Law and Analysis

### A.   Gata's Complaint is subject to preliminary screening.

Because Gata is suing officers or employees of a governmental entity and proceeding *in forma pauperis*, his Complaint is subject to preliminary screening under 28 U.S.C. § 1915A and § 1915(e)(2). Both statues provide for sua sponte

dismissal of a complaint, or any portion thereof, if a court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

      B.      <u>Gata fails to state a viable *Bivens* claim.</u>

Although 42 U.S.C. § 1983 entitles an injured person to money damages if a state official violates the person's constitutional rights, Congress did not create an analogous statute for federal officials. *See Ziglar v. Abbasi*, 582 U.S. 120 (2017).

In *Bivens*, however, the United States Supreme Court created a cause of action for money damages under the Fourth Amendment where federal agents allegedly "manacled" the plaintiff "in front of his wife and children and threatened to arrest the entire family"; "searched the apartment from stem to stem"; and took him to a federal courthouse where he was "interrogated, booked, and subjected to a visual strip search." *Bivens*, 403 U.S. at 389.

Over the next decade, the Supreme Court recognized two other causes of action against federal officers: (1) for sex discrimination against a former congressional staffer in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (2) for a failure to provide an asthmatic prisoner with adequate medical care in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980). Since then, the Supreme Court has not once extended the *Bivens* remedy, and it has declined to do so at least a dozen times. *See Looper v. Jones*, 22-40579, 2023 WL 5814910, at *1 (5th Cir. Sept. 8, 2023) (per curiam) (unpublished) (citing *Egbert v. Boule*, 596 U.S. 482 (2022)).

3

The Supreme Court has repeatedly emphasized that recognizing a cause of action under *Bivens* is "a 'disfavored' judicial activity," *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)), because "creating a cause of action is a legislative endeavor," *Egbert*, 596 U.S. at 491. "So today, '*Bivens* claims generally are limited to the circumstances' of *Bivens*, *Davis*, and *Carlson*." *Looper*, 2023 WL 5814910, at *1 (citing *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020)).

When analyzing a proposed *Bivens* claim, a court must consider: (1) whether the case presents a new context; and (2) if so, whether there are any alternative remedies or special factors indicating that judges are "at least arguably less equipped than Congress" to create a damages remedy. *Egbert*, 596 U.S. at 492.

A proposed *Bivens* claim is "new" if the case is different in a meaningful way from *Bivens*, *Davis*, or *Carlson*. *See Abbasi*, 582 U.S. at 139. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad" . . . "because 'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" *Oliva*, 973 F.3d at 442 (citations omitted)[1].

---

[1] As the Supreme Court has explained:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, at 1859–60.

Gata's allegations of excessive force by Bureau of Prison officers differ from *Bivens*, *Davis*, and *Carlson,* and present a "new context." *See Watkins v. Martinez*, No. 20-40781, 2022 WL 278376, at *1 (5th Cir. 2022) (Eighth Amendment excessive force claim raises a new context under *Bivens*).  Because Gata presents a "new context," the Court must contemplate whether there are any alternative remedies or special factors that counsel hesitation about granting the extension. *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021)*.*  There are.

As the United States Court of Appeals for the Fifth Circuit summarized:

> Congress has created a comprehensive scheme to govern suits brought by prisoners against federal jailers in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, enacted fifteen years after *Carlson*. *See Ziglar*, 582 U.S. at 148–49; *Watkins*, 998 F.3d at 685. When enacting this legislation, "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Ziglar*, 582 U.S. at 148. But Congress chose not to "provide for a standalone damages remedy against federal jailers" and arguably "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 149; *see also Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). Since "Congress has repeatedly declined to authorize the award of damages," we may not do so, *Mesa*, 140 S. Ct. at 747, even if we thought the PLRA remedy was "inadequate" here, *Egbert*, 142 S. Ct. at 1806.

*Looper*, 2023 WL 5814910, at *2.

Additionally, prisoners may seek relief under the Federal Tort Claims Act ("FTCA") or the Bureau of Prison's Administrative Remedy Program.  Both provide an alternative process foreclosing a damages remedy under *Bivens*. *See Sheldon v. Underwood*, 3:19-CV-2041, 2022 WL 1651463, at *6 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 1644443 (N.D. Tex. 2022); *Begay v. Leap*, 3:17-CV-2639, 2019 WL 1318410, at *3 (N.D. Tex. 2019), *report and recommendation*

5

*adopted*, 2019 WL 1315901 (N.D. Tex. 2019) (citations omitted); *Brunson v. Nichols*, 1:14-CV-2467, 2018 WL 7286410, at *3 (W.D. La. 2018) (citing cases). Even if the FTCA or grievance process does not provide the exact relief sought, the Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would. *Oliva*, 973 F.3d at 444.

### III. Conclusion

Because Gata has not stated a plausible claim that *Bivens* should be extended to the new context presented, IT IS RECOMMENDED that his Complaint (ECF No. 1) be DENIED and DISMISSED WITH PREJUDICE pursuant to §§ 1915(e)(2)(b) and 1915A.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, August 9, 2024.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE